FILED
2021 DEC 15 PM 1:22
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JUSTIN WHITE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case #4:20-cv-00119 PK<br><br>Magistrate Judge Paul Kohler |

　　　　This matter comes before the Court on Plaintiff Justin White's appeal from the decision of the Social Security Administration denying his application for disability and disability insurance benefits. The Court held oral arguments on December 7, 2021. After considering the parties' arguments, the record, and the law, the Court will affirm the administrative ruling.

I. STANDARD OF REVIEW

　　　　This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

consider all of the evidence, although they are not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.   PROCEDURAL HISTORY

In March 2018, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on October 15, 2017.[8] Plaintiff's claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on February 10, 2020.[10] The ALJ issued a decision on March 4, 2020, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on September 21, 2020,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

---

[4] *Id.* at 1009–10.
[5] *Richardson*, 402 U.S. at 390.
[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).
[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).
[8] R. at 153–56.
[9] *Id.* at 72, 73.
[10] *Id.* at 30–60.
[11] *Id.* at 9–29.
[12] *Id.* at 1–6.
[13] 20 C.F.R. § 422.210(a).

On October 26, 2020, Plaintiff filed his complaint in this case.[14] On December 28, 2020, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] The Commissioner filed an answer and the administrative record on April 15, 2021.[16]

Plaintiff filed his Opening Brief on June 4, 2021.[17] The Commissioner's Answer Brief was filed on August 8, 2021.[18] Plaintiff filed his Reply Brief on August 23, 2021.[19]

B.   MEDICAL HISTORY

Plaintiff alleges disability because of depression, anxiety, and a panic disorder.[20] Plaintiff asserts that these conditions "make it impossible to interact and get along with others."[21] He further states that his mental health issues affect his ability to concentrate and focus, as well as all social situations at work.[22] However, Plaintiff can prepare meals, exercise, take care of his pets, clean, do laundry, complete basic household repairs, do yardwork, go shopping, read, watch television, and hike.[23]

---

[14] Docket No. 3.
[15] Docket No. 11.
[16] Docket Nos. 17, 18.
[17] Docket No. 22.
[18] Docket No. 27.
[19] Docket No. 28.
[20] R. at 175.
[21] *Id.* at 194.
[22] *Id.*
[23] *Id.* at 195–98.

Plaintiff has received treatment for his mental health for years.  Plaintiff has attempted various treatments, including managing his symptoms with therapy, medication, and exercise, all with varying degrees of success.[24]  The medical records present a mixed picture.  During certain visits, Plaintiff's mood was euthymic, and his affect was happy.[25]  Yet in others, he was noted as being sad, depressed, anxious, agitated, or jittery.[26]  In general, it was noted that Plaintiff was well-groomed, pleasant, calm, and cooperative.[27]  At various times, his condition seemed to improve.[28]  At others, his condition worsened.[29]  Over the course of his treatment, the medical records show that Plaintiff's condition fluctuated.

Plaintiff began treatment with Cynthia Morris-MacDonnell, CMHC, and Kathryn Adams, APRN, in September 2018.  These providers jointly produced a medical source statement dated December 4, 2019.[30]  They opined that Plaintiff had marked limitations in his ability to concentrate, persist, or maintain pace, and adapt and manage himself.  They further opined that Plaintiff's symptoms would interfere with his ability to perform simple, routine tasks 20% or more of the time, and that he would be off task 20% or more.  In addition, they opined that Plaintiff would miss four days of work or more per month and would be 50% less efficient than

---

[24] *Id.* at 43–46.

[25] *Id.* at 261, 269, 277, 318, 320, 324, 345.

[26] *Id.* at 259, 263, 265, 267, 271, 273, 335, 350, 353, 357, 360, 368, 378, 381.

[27] *Id.* at 261, 263, 265, 267, 269, 290, 313, 315, 318, 320, 322, 324, 325, 327, 329, 335, 337, 340, 341, 343, 345, 352, 360, 368, 372, 374, 376.

[28] *Id.* at 270, 272, 275, 276, 312, 315, 328, 344, 371, 373.

[29] *Id.* at 261, 321, 322, 323, 324, 326, 336, 338, 342, 357, 358, 369, 373, 377, 379, 383, 387.

[30] *Id.* at 297–303.

an average worker. In a narrative statement, Morris-MacDonnell stated that, because of Plaintiff's conditions, "it would be difficult for him to proceed through a workday and be productive."[31] She also noted that while Plaintiff had seen some relief with medication, "the anxiety, nervousness, panic, and distress are still present but at a reduced intensity."[32]

Plaintiff was also evaluated by Paul C. Staheli, Psy. D.[33] Dr. Staheli found that Plaintiff had symptoms of depression and anxiety, as well as difficulties with concentration. Dr. Staheli noted that Plaintiff demonstrated above-average intellectual capabilities but his "social and emotional turmoil impacts his ability to work."[34] Dr. Staheli recommended continued psychotherapy and medication management. Dr. Staheli also noted that Plaintiff would need time to participate in therapy to learn healthy coping skills. Once Plaintiff developed such skills and was able to feel calmer, Dr. Staheli recommended participation in vocational rehabilitation.

State agency physicians also reviewed a portion of the record.[35] Although they assessed Plaintiff as having some moderate mental functional limitations, they concluded that he was able to perform simple, low-stress work that did not require frequent interaction with others.

C.      HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that his panic disorder was the primary reason he was unable to work.[36] Plaintiff stated that he suffered panic attacks at work and

---

[31] *Id.* at 302.
[32] *Id.*
[33] *Id.* at 304–10.
[34] *Id.* at 309.
[35] *Id.* at 61–85.
[36] *Id.* at 39.

5

recently attempted to work but a panic attack prevented him from starting that position.[37] Plaintiff noted that he takes medication, but he has had adverse reactions to medications in the past, including a loss of effectiveness, and his current medication produces side effects.[38]

D.  THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of October 15, 2017.[39] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: anxiety disorder with panic attacks, bipolar disorder, and obsessive-compulsive disorder.[40] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[41] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but was limited to simple repetitive tasks with a reasoning level of 2–3 and occasional contact with the general public.[42] At step four, the ALJ determined that Plaintiff could not perform any past relevant work.[43] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[44]

---

[37] *Id.* at 38–40.
[38] *Id.* at 45–46.
[39] *Id.* at 14–15.
[40] *Id.* at 15.
[41] *Id.* at 15–17.
[42] *Id.* at 17–23.
[43] *Id.* at 23.
[44] *Id.* at 23–25.

III.  DISCUSSION

Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence.  For applications filed on or after March 27, 2017, an ALJ is not required to defer or give any specific weight to medical opinions or prior administrative medical findings.[45]  Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c):  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding.  The most important criteria for determining persuasiveness are supportability and consistency.[46]  "For supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."[47]  "Consistency, on the other hand, is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."[48]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[49]  The ALJ must explain how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but is generally not required to explain how he or she considered other factors.[50]  Social Security Ruling 96-8p emphasizes

---

[45] 20 C.F.R. § 404.1520c(a).

[46] *Id.* § 404.1520c(a), (b)(2).

[47] *John H. v. Saul*, No. 2:20-CV-00255-JCB, 2021 WL 872320, at *4 (D. Utah Mar. 8, 2021) (internal quotation marks and citation omitted).

[48] *Id.*

[49] 20 C.F.R. § 404.1520c(b).

[50] *Id.* § 404.1520c(b)(2).

that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[51]

### Cynthia Morris-MacDonnell, CMHC and Kathryn Adams, APRN

As stated, Morris-MacDonnell and Adams jointly issued a medical source statement.[52] The document appears to have been completed by Morris-MacDonnell but was signed by both providers. They opined that Plaintiff had marked limitations in his ability to concentrate, persist, or maintain pace, and adapt and manage himself. They further opined that Plaintiff's symptoms would interfere with his ability to perform simple, routine tasks 20% or more of the time, and that he would be off task 20% or more of a workday. In addition, they opined that Plaintiff would miss four days of work or more per month and would be 50% less efficient than an average worker.

The ALJ's treatment of the opinions of Morris-MacDonnell and Adams is somewhat strange. Even though these providers issued a joint opinion, the ALJ treated their opinions separately. Though a narrative statement by Morris-MacDonnell may account for the different treatment. As to Adams, the ALJ found her opinions were "not persuasive" and "somewhat speculative."[53] In reaching this conclusion, the ALJ stated that the record indicates that Plaintiff

---

[51] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[52] R. at 297–303.

[53] *Id.* at 22.

8

was able to manage his symptoms through self-treatment and he was able to maintain regular daily routines. The ALJ then stated that "[s]uch statements are supported by the findings and conclusions of Kathryn Adams, APRN."[54] While this statement is confusing, other portions of the ALJ's decision demonstrate that the ALJ conducted the proper analysis. In a prior portion of his decision, the ALJ noted that Plaintiff reported that he was able to manage his symptoms with nutrition, exercise, and education as well as regular attendance at therapy and an organized daily routine.[55] The ALJ went on to note that Plaintiff reported that his routine helped create stability and decrease anxiety.[56] In yet another part of his decision, the ALJ noted that Plaintiff reported engaging in hobbies like reading, watching television, and exercising; was able to go shopping; could travel by walking, driving, or riding his bike; was able to complete household chores, including cleaning, laundry, yardwork, and repairs; and was able to care for himself.[57] All of these statements are supported by record evidence and support the ALJ's conclusion that the extreme limitations opined by Plaintiff's treatment providers were not persuasive.

Turning to Morris-MacDonnell, the ALJ assigned no persuasiveness to her opinions. The ALJ provided two reasons for this assessment. First, the ALJ stated that Morris-MacDonnell's opinions were inconsistent with her conclusion that Plaintiff "has had 'some relief of anxiety symptoms' with medications which have reduced the intensity of his symptoms."[58] While the ALJ is correct that Morris-MacDonnell stated that Plaintiff had received some relief with

---

[54] *Id.*
[55] *Id.* at 19.
[56] *Id.*
[57] *Id.* at 17–18.
[58] *Id.* at 22 (citing R. 302).

medication, Plaintiff argues that he continued to suffer symptoms even when on medication. The medical records show that Plaintiff continued to suffer depression, anxiety, and panic attacks even with medication.[59] However, the ALJ acknowledged this evidence and still concluded that the evidence showed improvement and management of Plaintiff's symptoms.[60] The Court cannot reweigh the evidence and substitute its judgment for that of the ALJ.

Second, the ALJ noted that Morris-MacDonnell was not an acceptable medical source. Under the new regulations, the ALJ was still required to evaluate her opinions using the factors set out in 20 C.F.R. § 404.1520c, so assigning no persuasive value on this basis alone would be inappropriate.[61] However, the ALJ did not rely solely on the fact that Morris-MacDonnell was not an acceptable medical source in rejecting her opinions. As described above, the ALJ articulated his reasons for finding Morris-MacDonnell's opinions to be unpersuasive and those reasons are supported by substantial evidence.

### Paul C. Staheli, Psy. D.

Plaintiff was evaluated by Dr. Staheli, who found that Plaintiff had symptoms of depression and anxiety, as well as difficulties with concentration, which "impacts his ability to work."[62] Dr. Staheli recommended continued psychotherapy and medication management to learn healthy coping skills. Once Plaintiff developed such skills and was able to feel calmer, Dr. Staheli recommended participation in vocational rehabilitation.

---

[59] *Id.* at 333, 344, 346, 352, 354, 357, 358, 369, 373, 377, 379, 383, 385, 387.

[60] *Id.* at 20.

[61] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

[62] R. at 309.

In evaluating the persuasiveness of Dr. Staheli's opinions, the ALJ concluded that "[t]o the extent that such statements suggest that the claimant has experienced serious functional restrictions, they are consistent with the objective medical evidence record."[63] The ALJ noted that Plaintiff had reported improved symptoms at times but that such statements were consistent with Dr. Staheli's examination and findings. Thus, the ALJ found that, to the extent they could be considered opinions, Dr. Staheli's statements were persuasive.

Plaintiff complains that the ALJ failed to provide an explanation as to how the "serious functional restrictions" are reflected in the RFC assessment. Nevertheless, in another portion of his decision, the ALJ found that the medical evidence did not support Plaintiff's allegations of disabling functional limitation. And, the ALJ went on to state that "[t]he foregoing does not mean the claimant does not have substantial limitation[s]."[64] The ALJ explained that he accounted for these limitations, "out of an abundance of caution," in the RFC assessment.[65] In particular, the RFC adopted by the ALJ limited Plaintiff to simple, repetitive tasks with a reasoning level of 2–3 and only occasional contact with the public due to Plaintiff's anxiety and panic attacks.[66] The ALJ further pointed to Dr. Staheli's testing and conclusions throughout his decision. The ALJ used this information to conclude that Plaintiff had only moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, and no limitation in the other areas of mental functioning.[67]

---

[63] *Id.* at 21–22.
[64] *Id.* at 20.
[65] *Id.*
[66] *Id.* at 18–19.
[67] *Id.* at 15–16.

Plaintiff also argues that there is a conflict between Dr. Staheli's opinions and the RFC. Dr. Staheli recommended that, as Plaintiff developed healthy coping skills and was able to feel calmer, he should participate in vocational rehabilitation.[68] Dr. Staheli believed that Plaintiff would "need time to participate in therapy to learn healthy coping skills."[69] From this statement, Plaintiff infers that Dr. Staheli set out a number of steps to be completed before Plaintiff could engage in full-time work and that these steps are not accounted for in the RFC.

First, it seems unlikely that these particular statements from Dr. Staheli constitute medical opinion evidence. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions."[70] Further, it is unclear how Dr. Staheli's recommendations fit within an RFC assessment, which "is the most [a claimant] can still do despite [their] limitations."[71] While the ALJ's treatment of Dr. Staheli's assessment, like his treatment of Plaintiff's treatment providers, is not as clear as it could be, it is nonetheless supported by substantial evidence.

<u>State Agency Physicians</u>

State agency physicians provided opinions in July and September 2018. They assessed Plaintiff as having some areas of moderate limitations. However, they concluded that Plaintiff was able to perform simple, low-stress work that did not require frequent interaction with others.

---

[68] *Id.* at 310.

[69] *Id.*

[70] 20 C.F.R. § 404.1513(a)(2).

[71] *Id.* § 404.1545(a)(1).

12

After their opinions were provided, Plaintiff submitted the joint report from Morris-MacDonnell and Adams, the evaluation from Dr. Staheli, and treatment notes from September 2018 onward. Despite the limited records reviewed by the state agency physicians, the ALJ found their opinions persuasive. Plaintiff argues that this later evidence demonstrates that the ALJ's reliance on the state agency physician's opinions is not supported by substantial evidence.

One of the factors to be considered when evaluating medical opinion evidence is "whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive."[72] Here, the ALJ reviewed all of the new evidence yet still found the state agency physicians' opinions to be consistent with that new evidence. As with the evidence reviewed by the state agency physicians, the medical records submitted thereafter showed that Plaintiff's condition continued to fluctuate, as already noted. Nothing about the new records shows any substantial worsening of Plaintiff's symptoms. Moreover, the ALJ accounted for all of these records in his decision. Therefore, the ALJ did not err in his evaluation of the state agency physicians' opinions.

---

[72] *Id.* § 404.1520c(c)(5).

IV.  CONCLUSION

Accordingly, the Court hereby AFFIRMS the decision of the Commissioner.

DATED:  15 December 2021

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge